1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**
9             **CENTRAL DISTRICT OF CALIFORNIA**
10
11   ZAYIN-ZARI BEY,                    |   Case No. CV 20-7458 VAP (PVC)
12                  Plaintiff,
                                        |   **ORDER DISMISSING COMPLAINT**
13        v.                               **WITH LEAVE TO AMEND**
14   LOS ANGELES SHERIFF
     DEPARTMENT, et al.,
15
                     Defendants.
16
17
18                         **I.**
19                   **INTRODUCTION**
20

21        On August 17, 2020, Plaintiff Zayin-Zari Bey ("Plaintiff"), a California resident

22   proceeding *pro se*, constructively filed a civil complaint purportedly pursuant to 28 U.S.C.

23   § 1332.  ("Complaint," Dkt. No. 1).  On August 26, 2020, the Court granted Plaintiff's

24   application for *in forma pauperis* ("IFP") status.  (Dkt. No. 5).

25

26        In civil actions where the plaintiff is proceeding IFP, Congress requires district

27   courts to dismiss the complaint if the court determines that the complaint, or any portion

28   thereof, (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be

                                        1

granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).  For the reasons stated below, the Complaint is DISMISSED with leave to amend.

## II.

## ALLEGATIONS OF THE COMPLAINT

According to caption of the Complaint and the list of Defendants, Plaintiff sues the "Los Angeles Sheriff's Department" [sic] ("LASD"), LASD Sheriff Alex Villanueva, Deputy Sheriffs Ronald Reynolds and D. Perez, and Captain of the LASD's Metrolink Bureau, Edward C. Wells.  (Complaint at 1-2).[1]  Although every Defendant, like Plaintiff, is a citizen of California, Plaintiff asserts that this Court has diversity jurisdiction over this matter.  (*Id.* at 1, 4).

Plaintiff's allegations in the Complaint and its many attachments are difficult to summarize in a coherent narrative and are largely nonsensical.  The "Complaint" consists of a form "Demand for the Conversion of Property," (*id.* at 1-5), attached to which is a seemingly random collection of documents, including (1) two Notices of Lien, (*id.* at 6-7); (2) an "Affidavit of Truth" referencing "Bill of Attainder #AA742660," (*id.* at 8-11); (3) an "Affidavit of Obligation Commercial Lien," again referencing "Bill of Attainder #AA742660," with a "Certificate of Non-Response," (*id.* at 12-16); (4) a "Notice of Fault and Opportunity to Cure," (*id.* at 17-19); (5) a "Notice of Default," (*id.* at 20-22); (6) an "Affidavit of Facts; Notice of Motion for Speedy Trial by Jury" captioned for the Superior Court of California, San Bernardino County, (*id.* at 23-25); (7) an LASD Watch Commander's Service Comment Report, (*id.* at 26); (8) a letter from the Office of the Sheriff, County of Los Angeles, Hall of Justice, (*id.* at 27); (9) a Notice to Appear and a

---

[1] The Court will cite to the pages of the Complaint and its attachments as though they were consecutively paginated, following the electronic page numbers assigned by the Court's CM/ECF docketing system.

record of Verbal Notice by Peace Officer, DMV or Court Employee, (*id.* at 28-29); (10) a cover sheet for "Exhibit A," with the subject "Contracts Given to Alleged Deputy at the time of the unlawful arrest, search and seizure on date 05/22/2020," (*id.* at 30); (11) a document from the so-called "Moorish National Republic Federal Government" purporting to convey a navigation right to the bearer and an exemption from traffic stops, with a table of fines due to the bearer for improper acts by authorities, (*id.* at 31-32); (12) an affidavit of Plaintiff Zayin-Zari Bey declaring that he has an unrestricted right of travel exempting him from compliance with the Vehicle Code, (*id.* at 33-36); (13) a Notice of Sale asserting rights due a property owner, (*id.* at 37-39); and (14) a proof of service. (*Id.* at 40). The vast majority of the attachments receive no mention or explanation in the Complaint.

The form Complaint itself, *i.e.*, the "Demand for Conversion of Property," (Complaint at 1-5), is nearly devoid of facts. However, in the attachment entitled "Affidavit of Truth," Plaintiff asserts that on April 22, 2020, he was driving on a main street going about 25 mph. (*Id.* at 8). He noticed a black and white car approaching him from the rear with its "emergency lights" on. (*Id.*). When the car started getting too close to him from behind, Plaintiff felt he was in danger, turned his car into the driveway of a private property, and stopped his car. (*Id.*). The black and white car then stopped behind Plaintiff's vehicle. (*Id.*). An "alleged lawman," later identified as Deputy Reynolds, got out of the car and approached Plaintiff's car. The officer demanded to see Plaintiff's "papers." (*Id.*). Plaintiff gave Deputy Reynolds a "Charge Schedule, an Affidavit of Identity and Right to Travel, as well as a Purchase Agreement" for the vehicle. (*Id.*). Deputy Reynolds ignored those papers and demanded to see Plaintiff's picture ID. Plaintiff hesitated, but eventually handed over his "nationality card" under "duress and coercion" following Deputy Reynolds' promise that he would not tow Plaintiff's car. (*Id.* at 8-9).

Plaintiff asked to see Deputy Reynolds's supervisor, which "enraged" the Deputy. (*Id.* at 9).  Deputy Reynolds also accused Plaintiff of "breaking some laws." (*Id.*).  Soon after, "back up officers" arrived at the scene.  (*Id.*).  Plaintiff asked for the name of one of the officers.  (*Id.*).  Moments later, about 40 tactical "military units" surrounded his car, which frightened Plaintiff's "family member" who was inside his car.  The "armed military soldiers" drew their guns at him.  (*Id.*).  Plaintiff was told to get out of his car by a "masked military soldier" or else have his window broken.  (*Id.*).  Plaintiff and his cousin, who was in the vehicle, were forced out of the car and placed in handcuffs in a police car.  (*Id.*).  Plaintiff claims the handcuffs caused him extreme pain.  (*Id.*).

An officer approached Plaintiff and demanded that he "give him information in exchange for [his] guaranteed release from [the officer's] custody." (*Id.*).  Plaintiff said that he wanted to exercise his right to remain silent.  (*Id.*).  The officer then became "very rough" with him and caused "serious damage" to his shoulder.  (*Id.*).  The officer also threatened to break Plaintiff's leg and tried to slam the door on it as it was hanging out of the police car.  (*Id.*).

Deputy Perez approached Plaintiff with a "bill of attainder" and told him that it was "mandatory" that he sign it.  (*Id.* at 10).  Plaintiff claims that he signed it under duress while reserving "his right to contract." (*Id.*).   After Plaintiff signed the "bill of attainder," Deputy Perez twisted Plaintiff's thumb until it was almost disfigured to produce a thumb print on the back of the bill.  (*Id.*).  The name "Charles Monroe," to which Plaintiff has a "right to trademark," was in the upper portion of the bill of attainder.  (*Id.*).  Deputy Perez told Plaintiff that he must pay money to the court because he signed the bill of attainder, although Plaintiff claims that he is not liable for any charges because he signed under duress.  (*Id.*).  Plaintiff also claims that he was damaged by the theft (or towing) of his private vehicle -- though it is not clear why, or even if, Plaintiff's car was actually towed. (*Id.*).  After exchanging some words, the officers departed.  (*Id.*).

4

Plaintiff alleges Defendants deprived him of his "rights under color of law" for towing his car without due process in violation of 18 U.S.C. § 242, which also constituted an unlawful conspiracy in violation of 18 U.S.C. § 241 and 18 U.S.C. § 1962.  (*Id*. at 4).  Plaintiff also claims Defendants violated his rights under Article I, Section 9 of the U.S. Constitution and the Ninth and Thirteenth Amendments.  (*Id.* at 14-15).  Plaintiff seeks cumulative monetary damages in the amount of $26,537,000.00.  (*Id.* at 5).

## III.

## STANDARD

When screening a complaint to determine whether it states a claim upon which relief can be granted, courts apply the pleading standard set forth in Federal Rule of Civil Procedure 12(b)(6).  *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) [the IFP statute] is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim.").  To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8, which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Although "detailed factual allegations" are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (Rule 12(b)(6) pleading standard is not satisfied by "an unadorned, the-defendant-unlawfully-harmed-me accusation," bare "labels and conclusions," or "naked assertion[s] devoid of further factual enhancement"). Similarly, courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc*., 349 F.3d 1191, 1200 (9th Cir. 2003); *see also Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017) (conclusory allegations of law are insufficient to state a claim); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (Rule 12(b)(6) does not require the court to accept as true mere legal conclusions). *Pro se* pleadings are "held to less stringent standards" than those drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). However, even in giving liberal interpretation to a complaint, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc*., 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

Before dismissing a *pro se* civil rights complaint, a plaintiff should be given "notice of the deficiencies in his or her complaint" with "an opportunity to amend the complaint to overcome deficiencies unless it is clear [the deficiencies] cannot be cured by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987). "Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc).

# IV.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must dismiss Plaintiff's Complaint due to defects in pleading. *Pro se* litigants in civil rights cases, however, must be given leave to amend their complaints unless it is absolutely clear that the deficiencies cannot be cured by amendment. *See Lopez*, 203 F.3d at 1128-29. Accordingly, the Court grants leave to amend.

### A.    The Complaint Fails To Comply With Rule 8

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)). A complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011).

The Complaint violates Rule 8 for reasons too numerous to list in detail. As a preliminary matter, however, the Complaint is styled as a state law "Demand for the Conversion of Property" and asserts that the Court has jurisdiction to hear the state law claim under 28 U.S.C. § 1332, the federal diversity jurisdiction statute. Section 1332 provides in relevant part that "[t]he district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000 . . . and is between (1) citizens of different States." However, the Complaint reveals on its face that the Court lacks jurisdiction in this matter under § 1332 because all of the parties are citizens of California. (Complaint at 1-2); *see also Owen Equip. & Erection Co. v.*

1  *Kroger*, 437 U.S. 365, 374 (1978) ("[D]iversity jurisdiction is not to be available when

2  any plaintiff is a citizen of the same State as any defendant.").

3

4  Furthermore, although the Complaint is styled as a "Demand for the Conversion of

5  Property," in the body of the Complaint, Plaintiff appears to assert that Deputies Reynolds

6  and Perez violated 18 U.S.C. § 241, which prohibits conspiracies to violate United States

7  constitutional or statutory rights, and 18 U.S.C. § 242, which prohibits the deprivation of

8  rights under color of law.  (Complaint at 4).  However, these statutes set forth criminal

9  violations and do not provide a civil private right of action.  *See Allen v. Gold Country*

10  *Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (affirming "dismissal of [plaintiff's] claims

11  under 18 U.S.C. §§ 241 and 242 because these are criminal statutes that do not give rise to

12  civil liability"); *Brown v. Montana*, 442 F. Supp. 2d 982, 988 (D. Mont. 2006)

13  ("[Plaintiff] cannot proceed under Title 18 of the United States Code because 18 U.S.C.

14  §§ 241, 242, and 1201 define criminal offenses that do not give rise to private causes of

15  action, and private persons such as [plaintiff] have no legally cognizable interest in the

16  prosecution of others.") (internal citations omitted).

17

18  Plaintiff also appears to attempt to claim that Deputies Reynolds and Perez violated

19  18 U.S.C. § 1962, the criminal RICO statute.  (Complaint at 4).  Even if the Court were to

20  construe this allegation as a civil RICO claim under § 1964, the claim necessarily fails.

21  *See* 18 U.S.C. § 1964(c) (expressly granting a private right of action where an individual

22  is "injured in his business or property by reason of a violation of section 1962 of this

23  chapter").  To state a civil RICO claim, a Complaint must plead the following elements:

24  (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.

25  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  In addition, the conduct must be

26  (5) the proximate cause of harm to the plaintiff.  *Eclectic Properties E., LLC v. Marcus &*

27  *Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  Racketeering activity generally

28  requires commission of one of the predicate acts enumerated in 18 U.S.C. § 1961(1), such

as acts or threats "involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance," as well as counterfeiting, human trafficking, and money laundering, among other acts.  *See Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, 226 F. Supp. 3d 1141, 1159 (D. Or. 2016) ("Section 1961 of RICO provides an extensive list of conduct that is considered racketeering activity.").  The Complaint does not allege that Deputies Reynolds and Perez engaged in any "racketeering activity," much less a *pattern* of racketeering activity.

The Complaint fares no better to the extent that it is attempting to assert state law claims such as conversion.  Even if the Court were to exercise supplemental jurisdiction to hear Plaintiff's state law claims, it could not provide relief on these claims as they are currently pled.  Under the California Government Claims Act ("CGCA"), a plaintiff may not bring an action for damages against a public employee or entity unless he first presents a written claim to the local governmental entity within six months of the accrual of the action.  *See Mabe v. San Bernardino Cnty., Dept. of Public Social Services*, 237 F.3d 1101, 1111 (9th Cir. 2001) (CGCA requires the "timely presentation of a written claim and the rejection of the claim in whole or in part" as a condition precedent to filing suit); *see also* Cal. Gov't Code § 945.4 ("[N]o suit for money or damages may be brought against a [local] public entity . . . until a written claim therefor has been presented to the public entity . . . .").  A plaintiff must affirmatively allege compliance with the CGCA's claims presentation requirement in the complaint or explain why compliance should be excused.  *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *see also State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1245 (2004) ("[F]ailure to allege compliance or circumstances excusing compliance with the claim presentation requirement [of the California Government Claims Act, Cal. Gov't Code § 900 et seq.] subjects a complaint to a general demurrer for failure to state facts sufficient to constitute a cause of action."); *Briggs v. Lawrence*, 230 Cal. App. 3d 605, 613 (1991) ("[O]ne who

1   sues a public employee on the basis of acts or omissions in the scope of the defendant's

2   employment [must] have filed a claim against the public-entity employer pursuant to the

3   procedure for claims against public entities.  Failure to allege compliance renders the

4   complaint in such an action subject to general demurrer.")  (internal citations omitted).

5

6          Furthermore, the failure to exhaust a state law claim subject to the California

7   Government Claims Act "is a jurisdictional, not a procedural, defect.  Thus, instead of

8   abating an action as premature, a trial court must grant summary judgment and dismiss the

9   suit upon a finding that a party has not exhausted his or her administrative remedies."

10  *Miller v. United Airlines, Inc.*, 174 Cal. App. 3d 878, 890 (1985); *see also Cornejo v.*

11  *Lightbourne*, 220 Cal. App. 4th 932, 938 (2013) ("Ordinarily, filing a claim with a public

12  entity pursuant to the Claims Act is a jurisdictional element of any cause of action for

13  damages against the public entity . . . .").  Plaintiff did not plead that he satisfied the

14  CGCA's claims presentation requirement with respect to his claim for conversion or any

15  other state law claim and has presented no evidence showing that he exhausted his state

16  law claims before filing suit.  Accordingly, the Court lacks jurisdiction to hear Plaintiff's

17  state law claims as pled.

18

19         Even if Plaintiff had exhausted his state law claims under the CGCA, his "Demand

20  for the Conversion of Property," by itself, fails to allege *any* coherent facts that

21  specifically explain what each Defendant did to violate Plaintiff's rights, and which rights

22  they violated.  The only substantive statement of facts in the Demand for the Conversion

23  of Property is:

24

25         I demand that the sheriff deputy pay for the loss of damages incurred

26         during the illegal search and seizure.  The deputy had no probable cause to

27         use his emergency lights to pull me over, let alone steal my conveyance.  I

28         gave Ronald Reynolds a Charge Schedule at the time of arrest to secure my

1    right to liberty and property and the attached Lien and Charge Schedule

2    confirms the $26,537,000.00 owed by the deputies and Sheriff of Los

3    Angeles.

4

5    (Complaint at 5).  However, to even begin to make sense of these disjointed, unsupported

6    assertions, Defendants would be required to wade through the multiple attachments to the

7    Complaint and attempt to guess which attachments were intended to articulate Plaintiff's

8    claims and which attachments are merely evidence supporting Plaintiff's claims.  Under

9    Rule 8, Defendants are not required to guess what Plaintiff believes they did wrong.

10

11        The Complaint violates Rule 8 for the additional reason that Plaintiff makes

12   obviously nonsensical assertions.  For example, Plaintiff's "Affidavit of Truth" and

13   "Affidavit of Commercial Lien" both reference "Bill of Attainder #AA742660,"

14   (Complaint at 8, 12), and Plaintiff expressly alleges that Deputy Perez forced him to sign

15   a bill of attainder under duress.  (*Id.* at 10).  It is unclear what Plaintiff believes a "bill of

16   attainder" is, but it is very clear that whatever document he was purportedly required to

17   sign was not a bill of attainder.  "A bill of attainder is a law that legislatively determines

18   guilt and inflicts punishment upon an identifiable individual without provision of the

19   protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977);

20   *see also SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002)

21   (quoting same).  As the Ninth Circuit explains:

22

23        "'[L]egislative acts, no matter what their form, that apply either to named

24        individuals or to easily ascertainable members of a group in such a way as

25        to inflict punishment on them without a judicial trial are bills of attainder

26        prohibited by the Constitution.'"  *United States v. Brown*, 381 U.S. 437,

27        448-49 (1965) (quoting *United States v. Lovett*, 328 U.S. 303, 315 (1946)).

28        Three requirements must be met to establish a violation of the bill of

attainder clause:  "[S]pecification of the affected persons, punishment, and lack of a judicial trial."  *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group*, 468 U.S. 841, 847 (1984).

*United States v. Munsterman*, 177 F.3d 1139, 1141 (9th Cir. 1999) (parallel citations omitted).  The United States Constitution prohibits bills of attainder.  U.S. Const. art. I, § 9, cl. 3.  It is utterly implausible that Deputy Perez gave Plaintiff a legislative act to sign, just as it is equally implausible for a bill of attainder to have been enacted by Congress specifically against Plaintiff in anticipation of the traffic stop that would somehow have required his signature.

Additionally, the basis of Plaintiff's damages claim is fantastical and does not state a plain and simple, plausible claim for relief.  In essence, Plaintiff alleges that he was subject to a traffic stop.  When asked to show identification, Plaintiff produced a patently fabricated document from the so-called "Moorish National Republic Federal Government/Moorish Divine and National Movement of the World" that purports to grant the bearer a fully protected right of travel.  (Complaint at 31-35).  The document includes an affidavit in which Plaintiff states that "I have determined and hereby affirm by AFFIDAVIT and under oath, by virtue of my declared sovereign state Citizenship and American case law, that I am NOT required to have government permission to travel, NOT required to have a driver's license, NOT required to have vehicle registration of my personal property, nor to surrender the lawful title of my duly conveyed property to the State as security against government indebtedness and the undeclared federal bankruptcy."  (*Id.* at 34).  There is no serious dispute that this unilateral declaration of exemption from the California Vehicle Code is legally unenforceable.

The travel document further cautions that if any sheriff or municipal agent attempts to stop or impede the bearer's travel, the officer and his agency will be liable for monetary

"charges" unless the bearer is released and allowed to continue his travels within two minutes of the initiation of the stop. (*Id.* at 31). The charge schedule includes line items for: the officer failing to properly identify himself with three forms of identification ($100,000); making the bearer turn his vehicle engine off ($7,000); requiring the bearer ($7000) or any of his passengers ($7000) "to loan [a] physical form of identification to [the] agent"; requiring the bearer ($15,000) or any of his passengers ($100,000) to exit the vehicle; forcing the bearer to "sign any document/bill of attainder/ticket under threat, duress, and coercion" ($7,000); and "denaturalizing" "Moorish Americans" by referring to them as "black, african-american [sic], negro, colored, or enslavement christian name/nom de guerre" ($7,000,000), among many other "charges." (*Id.* at 32). Adding up the purported charges accrued in the alleged traffic stop based on this schedule, Plaintiff attaches "notices of liens" to the Complaint which he contends entitle him, as the "judgment creditor," to $26,537,000.00, even though there is no "judgment" for Plaintiff to collect. (*Id.* at 6-7). Plaintiff's made-up charge schedule and "notices of liens" are patently unenforceable and will not support a federal civil action.

Accordingly, the Complaint must be dismissed for violation of Rule 8. The litany of disjointed, fantastical claims and allegations with no basis in law do not provide Defendants with a "short and plain statement" of plausible claims against them. While dismissal is with leave to amend, Plaintiff is cautioned that the reassertion of claims with no basis in law or fact will result in a recommendation that this action be dismissed with prejudice without further notice.

## B.     The Complaint Fails To State A Constitutional Claim Under § 1983

Stripped of the implausible and unsupportable allegations described above, the Complaint, generously construed, appears to be an attempt to contend that Plaintiff was subjected to an unlawful arrest and the unconstitutional confiscation of his property during

a traffic stop, although neither of these claims is clearly pled.  Accordingly, the Court construes Plaintiff's claims liberally to arise under 42 U.S. Code § 1983, the statute governing civil actions for violations of civil rights.  *See Wilhelm*, 680 F.3d at 1121.

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (quoting 42 U.S.C. § 1983).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Id*.  To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "A person deprives another 'of a constitutional right, within the meaning of [§] 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'"  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

### 1.    Plaintiff Fails to State a § 1983 Claim Against Captain Wells or Deputies Reynolds and Perez

"Personal-capacity suits [under § 1983] seek to impose personal liability upon a government official for actions [the official] takes under color of state law."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  To state a claim against Captain Wells and/or Deputies Reynolds and Perez in their individual capacities, Plaintiff must identify the constitutional right each Defendant allegedly violated while acting under color of state law and show either the defendant's direct, personal participation in the constitutional

14

1   violation, or some sufficient causal connection between the defendant's conduct and the

2   alleged violation.  *See Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011).

3

4                            *a.      Captain Wells*

5

6        Although Captain Wells is a named Defendant, (Complaint at 2), the Complaint

7   does not raise any specific allegations against him.  The only reference to Captain Wells

8   in the Complaint or any of its attachments appears to be a letter that Captain Wells sent to

9   Plaintiff on behalf of the Office of the LASD Sheriff.  (Complaint at 27).  The letter states

10  that the LASD investigated a complaint Plaintiff had submitted against an employee at the

11  Metrolink Bureau and found that the employee's action was justified.  (*Id.*).  The

12  Complaint does not explain what the subject of Plaintiff's personnel complaint was or its

13  connection to the acts at issue here.  However, assuming that the letter is the reason why

14  Plaintiff has named Captain Wells as a Defendant, any purported claim against Captain

15  Wells fails under Rule 12(b)(6) because the Complaint does not explain what right

16  Plaintiff believes Captain Wells violated by this letter and why.

17

18       Furthermore, Plaintiff is advised that the mere denial of a request for an

19  investigation submitted to a governmental agency does not, by itself, constitute a

20  constitutional violation.  The First Amendment provides that Congress shall make no law

21  abridging the right of the people "to petition the Government for redress of grievances."

22  The right to petition the government is "cut from the same cloth" as the other guarantees

23  in the First Amendment and is "an assurance of a particular freedom of expression."

24  *McDonald v. Smith*, 472 U.S. 479, 482 (1985).

25

26       However, the Petition Clause guarantees only that an individual may "speak freely

27  and petition openly" and that he will be free from retaliation by the government for doing

28  so.  *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 464-65

                                           15

(1979) (per curiam).  The First Amendment does not guarantee that there will be any government response to a petition or that the government will take any action regarding the relief demanded by the petitioner.  Specifically, the First Amendment does not impose an affirmative obligation on the government to consider, respond to, or grant any relief on a citizen's petition for redress of grievances.  *Smith*, 441 U.S. at 464-65; *see also Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."); *We the People Foundation, Inc. v. United States*, 485 F.3d 140, 141 (D.C. Cir. 2007) ("[T]he Petition Clause does not provide a right to a response or official consideration [of a citizen's grievance]."); *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1237 (10th Cir. 2007) ("[T]he right to petition confers no attendant right to a response from the government."); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000) ("[W]hile the government may not interfere with the right to petition, it need not grant the petition, no matter how meritorious it is.") (internal citations omitted).

Plaintiff exercised his constitutional right to petition the government by filing a citizen's complaint.  The exercise of that right did not trigger an obligation under the federal Constitution for the LASD, or Captain Wells in particular, to consider or investigate Plaintiff's claims, or even to provide any response to Plaintiff, much less to grant the relief requested by his complaint.  Accordingly, any claim against Captain Wells is dismissed, with leave to amend.

### b.    *Deputies Reynolds and Perez*

Uniquely among the named Defendants, Plaintiff purports to sue Deputies Reynolds and Perez in both their official and individual capacities.  (Complaint at 15).  An "official capacity" claim against a county official is "another way of pleading an action

against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978). "If both [a municipality and a municipal officer acting in his or her official capacity] are named, it is proper upon request for the Court to dismiss the official-capacity officer[.]" *Luke v. Abbott*, 954 F. Supp. 202, 205 (C.D. Cal. 1997). The Complaint sues both the LASD, the municipal agency for which Deputies Reynolds and Perez work, and Reynolds and Perez in their official capacities. Accordingly, the official capacity claims are redundant to the claims against the LASD and are subject to dismissal.

The Complaint does not explain why the acts attributed to Deputies Reynolds and Perez violated Plaintiff's rights. The Complaint lists certain provisions of the Constitution that Plaintiff summarily claims were violated, but does not allege any facts showing which specific act by which specific Defendant violated which specific right, or the specific harm that resulted to Plaintiff from the violation. (Complaint at 14-15). For example, Plaintiff broadly asserts that his rights were violated under Article I, section 9, clauses 3-7 of the U.S. Constitution, but provides no facts to support any of these claims. (Complaint at 14). Indeed, it is difficult to imagine how these particular Defendants could possibly be liable for violations of the provisions cited. Article I addresses the legislative powers of Congress. The specific clauses in Section 9 cited by Plaintiff prohibit Congress from enacting bills of attainder and ex post facto laws; limit Congress's tax authority; provide that no preference shall be given to one state's ports over another's; and require that withdrawals from the public Treasury be made by appropriations bills. Plaintiff has not shown how county sheriff's deputies, acting under color of state law, could possibly be civilly liable for Congress's passage of federal tax laws or appropriations bills, or explained why they could be the proper defendants in a facial challenge to the constitutionality of any such laws. Accordingly, Plaintiff's Article I claims are dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) ("[N]aked assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the elements of a cause of

1   action, supported by mere conclusory statements" will not suffice to withstand dismissal

2   under 12(b)(6)).

3

4       Plaintiff also summarily asserts that his Ninth and Thirteenth Amendment rights

5   were violated.  (*Id.* at 15).  But even if Plaintiff had alleged facts showing exactly what

6   any of the named Defendants separately did to violate his constitutional rights, which he

7   did not, courts have never recognized the Ninth Amendment, which simply provides that

8   rights not specifically granted to the federal government by the Constitution are retained

9   by the people, as a valid ground for a § 1983 claim.  *Strandberg v. City of Helena*, 791

10  F.2d 744, 748 (9th Cir. 1986).  And nowhere in the Complaint does Plaintiff state facts

11  showing that he was forced into involuntary servitude (*i.e.*, into slavery), in violation of

12  the Thirteenth Amendment.  *Brogan v. San Mateo City*, 901 F.2d 762, 764 (9th Cir. 1990).

13  Accordingly, these claims must also be dismissed.

14

15      It is possible, though far from certain, that Plaintiff may be attempting to allege a

16  violation of his Fourth Amendment rights, though he does not specifically invoke the

17  Fourth Amendment anywhere in the Complaint.  (Complaint at 8-10).  The Fourth

18  Amendment protects the "[t]he right of . . . people to be secure in their persons, houses,

19  papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

20  It protects against unlawful arrests and seizures of property, and prohibits the use of

21  excessive force in the execution of an arrest.

22

23      "'A claim for unlawful arrest is cognizable under § 1983 as a violation of the

24  Fourth Amendment, provided the arrest was without probable cause or other

25  justification.'"  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc)

26  (citation omitted); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013).

27  "'Probable cause exists when there is a fair probability or substantial chance of criminal

28  activity.'"  *Lacey*, 693 F.3d at 918 (citation omitted); *see also Gravelet-Blondin*, 728 F.3d

18

at 1097-98 ("Probable cause exists if the arresting officers had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime." (citation and internal quotation marks omitted)).  Thus, to state a Fourth Amendment unlawful arrest claim against Deputies Reynolds and/or Perez, Plaintiff must allege facts demonstrating that he was arrested, and that the arrest was without probable cause.  *Lacey*, 693 F.3d at 918.  The Complaint fails to allege facts supporting an unlawful arrest claim.

"A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'"  *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992) (citation omitted).  "A seizure results in a constitutional violation only if it is unreasonable."  *Nelson v. City of Davis*, 685 F.3d 867, 878 (9th Cir. 2012).  Determining whether "a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (some internal quotation marks omitted).  While the "reasonableness" inquiry "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," the inquiry is always an objective one:  "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id.* at 396-97.  Although the Complaint vaguely alleges that Plaintiff's vehicle was towed, it does not allege facts showing when, by whom, or on whose orders the seizure occurred; nor does the Complaint explain why the seizure was unreasonable.

A claim of excessive force in the context of an arrest or investigatory stop also implicates the Fourth Amendment right to be free from "unreasonable . . . seizures."  U.S. Const. amend. IV; *see Graham*, 490 U.S. at 394.  Courts analyze claims of excessive force

under an "objective reasonableness" standard.  *Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010) (citing *Graham*, 490 U.S. at 395).  "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id*. at 396 (citations and internal quotation marks omitted).  Here, too, Plaintiff does not provide sufficient facts.  Although he claims that his shoulder and thumb were injured during the encounter, he does not provide sufficient facts showing that the force applied was unreasonable to state a cognizable claim.  *See, e.g., Cnty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1547 (2017).  Thus, to the extent that the Complaint tacitly attempts to assert Fourth Amendment claims against Deputies Reynolds and Perez, whether based on an unlawful arrest, the wrongful seizure of his vehicle, or the undue application of force, the claims must be dismissed, with leave to amend.

If Plaintiff intends to assert his civil rights claims in an amended complaint, he must clearly identify in a short plain statement the specific constitutional right violated, which officer's conduct violated which right, and facts showing how each Defendant violated the elements of the constitutional right -- *i.e.*, enough so that each Defendant will have fair notice of each precise claim being asserted him so that he may properly respond.  *See Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996); *see also Cafasso*, 637 F.3d at 1058 (a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint).  It is not sufficient to allege that "Defendants" collectively violated Plaintiff's rights.  Plaintiff must explain, for each Defendant individually, exactly what that particular Defendant did to violate the Constitution.

1  **2.     The Complaint Fails to State a Supervisory Liability Claim**

2  **Against Sheriff Villanueva**

3

4       Plaintiff does not plead any facts indicating that Sheriff Villanueva participated in

5  or even knew about the events alleged in the Complaint.  (*See* Complaint at 8-15).

6  Accordingly, it is impossible to discern from the Complaint why Plaintiff believes Sheriff

7  Villanueva violated his rights.

8

9       However, assuming that Plaintiff named Sheriff Villaneuva solely because he leads

10  the LASD, Plaintiff is advised that government officials are not liable under § 1983

11  simply because their subordinates engaged in unconstitutional conduct.  *See Iqbal*, 556

12  U.S. at 676.  Where a plaintiff sues a supervisor but does not allege that the supervisor

13  *directly* participated in the constitutional violation, the complaint must show that the

14  supervisor had a "sufficient causal connection" to the violation because he "set 'in motion

15  a series of acts by others, or knowingly refused to terminate [such acts], which he knew or

16  reasonably should have known, would cause others to inflict the constitutional injury.'"

17  *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (quoting *Larez v. City of Los*

18  *Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)); *see also Preschooler II v. Clark County Bd.*

19  *Of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007)  (a supervisor may be held accountable

20  only "for his own culpable action or inaction in the training, supervision, or control of his

21  subordinates, for his acquiescence in the constitutional deprivations of which the

22  complaint is made, or for conduct that showed a reckless or callous indifference to the

23  rights of others").

24

25       Although Plaintiff lists Sheriff Villanueva as a Defendant in the Complaint, his

26  mere inclusion on a list does not explain how he directly participated in the alleged

27  constitutional violation or set in motion the acts by his subordinate officers, knowing that

28

they would cause a constitutional injury to Plaintiff.  Accordingly, the claims against

Sheriff Villanueva are dismissed, with leave to amend.

### 3.    The Complaint Fails to State a *Monell* Claim Against the LASD

Plaintiff sues the Los Angeles County Sheriff's Department, which the Ninth

Circuit has held is a separately suable local governmental entity.  *See Streit v. County of*

*Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001).  Under § 1983, local governments and

their agencies are responsible only "for their own illegal acts" and are not vicariously

liable for their employees' conduct.  *Connick v. Thompson*, 563 U.S. 51, 60 (2011)

(quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  To allege a § 1983 claim

against a local governmental entity such as a sheriff's department, a plaintiff must allege

not only a constitutional deprivation, but also an official policy, custom, or practice that

was the "moving force" that caused the constitutional deprivation.  *Monell*, 436 U.S. at

694-95; *Villegas v. Gilroy Garlic Festival Ass'n*, 541 U.S. 950, 957 (9th Cir. 2008).

"Official municipal policy includes the decisions of a government's lawmakers, the acts

of its policymaking officials, and practices so persistent and widespread as to practically

have the force of law."  *Connick*, 563 U.S. at 61; *see also Jett v. Dallas School Dist.*, 491

U.S. 701, 738 (1989) (municipality may be liable based on its "acquiescence in a

longstanding practice or custom" that constitutes its "standard operating procedure").

Here, Plaintiff does not plead any facts showing an LASD policy, custom or

practice that led to his alleged harm.  (Complaint at 8-15).  Accordingly, Plaintiff fails to

state a claim against the LASD and his claim must be dismissed, with leave to amend.

# V.

## CONCLUSION

For the reasons stated above, the Complaint is dismissed with leave to amend.  If Plaintiff still wishes to pursue this action, he must file a First Amended Complaint within **thirty (30) days from the date of this Order**.  In any amended complaint, Plaintiffs shall cure the defects described above.  If Plaintiff chooses to file a First Amended Complaint, he must clearly designate on the face of the document that it is the "First Amended Complaint."  The First Amended Complaint must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety.  Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims asserted in the Complaint.  *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (denial of leave to amend not abuse of discretion where proposed new claims would have "greatly altered the nature of the litigation" and required defendants to undertake "an entirely new course of defense"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (affirming denial of leave to amend where additional claims "advance different legal theories and require proof of different facts").  In addition, the First Amended Complaint must be complete in and of itself, without reference to the original Complaint, or any other pleading, attachment, or document.

An amended complaint entirely takes the place of the preceding complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  After amendment, the Court will treat any preceding complaint, including any exhibits attached to the preceding complaint, as nonexistent.  *Id.*  If Plaintiff wishes the Court to consider any exhibits from the original Complaint, he must re-attach them to the First Amended Complaint.  Because the Court grants Plaintiff leave to amend all the claims raised here, any claim raised in the original Complaint is waived if it is not raised again in the First Amended Complaint.  *Lacey*, 693 F.3d at 928.

1    In any amended complaint, Plaintiff should confine his allegations to the essential

2  facts supporting each of his claims.  Plaintiff is strongly encouraged to keep his statements

3  concise and to omit irrelevant details.  Plaintiff is advised that pursuant to Federal Rule of

4  Civil Procedure 8(a), all that is required is a "short and plain statement of the claim

5  showing that the pleader is entitled to relief."  **Plaintiff is strongly encouraged to use the**

6  **standard civil rights complaint form when filing any amended complaint, a copy of**

7  **which is attached.**  In any amended complaint, Plaintiff must describe, to the extent

8  possible, what each separate Defendant, including each separate Doe Defendant, if any,

9  did to violate his rights; where and when the wrongful conduct occurred; the harm that

10  Plaintiff suffered from the Defendant's acts and omissions; and the constitutional right or

11  statute that each Defendant violated.  It is not necessary for Plaintiff to cite case law,

12  include legal argument, or provide evidence to support his claims at this stage of the

13  litigation.  Plaintiff is also advised to omit any claims for which he lacks a sufficient legal

14  or factual basis.

15

16    The Court cautions Plaintiff that it generally will not be inclined to grant further

17  opportunities to amend if the First Amended Complaint continues to assert claims for

18  which relief cannot be granted for the reasons explained in this Order.  "[A] district

19  court's discretion over amendments is especially broad 'where the court has already given

20  a plaintiff one or more opportunities to amend his complaint.'"  *Ismail v. Cnty. of Orange*,

21  917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) (quoting *DCD Programs, Ltd. v. Leighton*,

22  833 F.2d 183, 186 n.3 (9th Cir. 1987)); *see also Cafasso*, 637 F.3d at 1058 ("[T]he district

23  court's discretion to deny leave to amend is particularly broad where plaintiff has

24  previously amended the complaint.") (internal quotation marks omitted).  Thus, if Plaintiff

25  files a First Amended Complaint with claims that repeat the same pleading defects

26  addressed in this Order, the Court may recommend that the First Amended Complaint be

27  dismissed with prejudice for failure to state a claim.

28

Instead of filing a First Amended Complaint, Plaintiff may choose to stand on the defective claims in the original Complaint, but must expressly notify the Court in writing of his intention to do so by the same deadline for filing an amended complaint, *i.e.*, thirty days from the date of this Order.  Plaintiff is cautioned, however, that when a plaintiff chooses to stand on a defective complaint despite having been afforded the opportunity to amend, the district court may dismiss any defective claims under Federal Rule of Civil Procedure 12(b)(6) and allow the action to proceed only on the surviving claims, if any, that sufficiently state a claim.  *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004).  Plaintiff is advised that if he elects to stand on the defective claims in his original Complaint, the Magistrate Judge will recommend that the Court dismiss some or all of his claims for the reasons stated in this Order.  *See McCalden v. California Library Ass'n*, 955 F.2d 1214, 1224 (9th Cir. 1992) (a plaintiff granted leave to amend a pleading "may elect to stand on her pleading and appeal"); *Edwards*, 356 F.3d at 1065 ("When the plaintiff timely responds with a formal notice of his intent not to amend, the threatened dismissal merely ripens into a final, appealable judgment.").  *Id.*

Accordingly, Plaintiff is ORDERED to file either a First Amended Complaint or a Notice of Intention to Stand on Defective Complaint within thirty days of the date of this Order.  **Plaintiff is explicitly cautioned that the failure to file either a First Amended Complaint or a Notice of Intention to Stand on Defective Complaint by the Court's deadline *will* result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey court orders pursuant to Federal Rule of Civil Procedure 41(b).**  *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 891 (9th Cir. 2019) ("'The failure of the plaintiff eventually to respond to the court's *ultimatum* -- either by amending the complaint or by indicating to the court that it will not do so -- is properly met with the sanction of a Rule 41(b) dismissal.'") (quoting *Edwards*, 356 F.3d at 1065) (emphasis in original).

Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1).  **A form Notice of Dismissal is attached for Plaintiff's convenience.**

DATED:  December 11, 2020

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE